IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01380-MSK-MEH

DARRELL L. HAVENS,

    Plaintiff,

v.

WILLIAM JOHNSON, Arvada Police Detective,

    Defendant.

## AMENDED[1] RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Defendant's Motion to Dismiss Based on the Statute of Limitations and Fed. R. Civ. P. 12(b)(6) [filed November 12, 2009; docket #24]. Because the Plaintiff submitted evidentiary materials in support of his response to the motion, the motion was converted to a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 [docket #48]. By Order of Reference to United States Magistrate Judge, this matter has been referred to me to conduct proceedings in this civil action pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b). The matter is fully briefed, and the Court recommends that, for the following reasons, the motion be **denied**.[2]

---

    [1]After issuing the original Recommendation in this case on June 9, 2010, the Court realized it had inadvertently overlooked an allegation made by the Plaintiff in his response to the present motion, which has changed the Court's analysis of the issues. Because this Amended Recommendation supercedes the Recommendation filed by this Court on June 9, 2010, the Court directs the Clerk of the Court to terminate the June 9, 2010 Recommendation.

    [2]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider

**FINDINGS OF FACT**

1.	On January 3, 2007, the Plaintiff suffered serious injuries after being shot three times allegedly by the Defendant, a police officer. Docket #14.

2.	The Plaintiff was a patient at St. Anthony Central Hospital in critical condition from January 3, 2007 to February 12, 2007. Docket #46 at 5. According to the hospital, the Plaintiff suffered cord disruption and quadriplegia. *Id.*

3.	Sometime over the course of the six-week period between January 3, 2007 and February 12, 2007, the Plaintiff had multiple surgeries, was placed on a ventilator and was sedated. *Id.* The hospital determined that Plaintiff could neither make decisions for himself nor handle his financial business. *Id.*

4.	On February 12, 2007, the Plaintiff was transferred from St. Anthony Hospital to a Denver Health facility for "acute inpatient rehabilitation." Docket #46 at 6. According to his treating physician, the Plaintiff suffered a spinal cord injury leaving him paralyzed from the neck down with "very limited use" of his left arm. *Id.*

5.	On March 13, 2007, the Plaintiff remained hospitalized at Denver Health paralyzed from the neck down, had a sitting tolerance of one hour, was unable to travel from the hospital, and was dependent in all aspects of activities of daily living and mobility. *Id.*

6.	On May 1, 2007, the Plaintiff remained hospitalized at Denver Health paralyzed from the

---

frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

neck down, had a sitting tolerance of 2-3 hours, was unable to mobilize independently and required the assistance of two persons to get him from the bed to a wheelchair. Docket #46 at 7.

7. On July 19, 2007, the Plaintiff remained hospitalized at Denver Health paralyzed from the neck down, had a sitting tolerance of eight hours, and remained dependent in all aspects of activities of daily living, except that he was independent in community locomotion with an electric wheelchair. The treating physician anticipated that Plaintiff "will likely be hospitalized for several more months." Docket #46 at 8

8. The Plaintiff alleges that, on August 7, 2007, he was placed in the care of Woodbridge Park Nursing Home. Docket #46 at 2.

9. From January 2008 through September 2008, the Plaintiff was seen at Denver Health Westside Family Health Center for medical appointments. Docket #46 at 9.

10. On September 23, 2008, Swedish Medical Center issued a "Discharge Medication Reconciliation List" listing a number of medications taken by and administered to the Plaintiff both before and during his hospital stay from September 16, 2008 through September 23, 2008.

11. In or about October 2008, the Plaintiff was incarcerated at Fort Lyons Correctional Facility where he currently remains.

12. Plaintiff initiated this lawsuit on June 4, 2009 by filing a motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Docket #1. The Court granted Plaintiff's motion on June 15, 2009. Docket #2.

13. On June 15, 2009, the Plaintiff filed a Complaint against William Johnson, the Arvada Police Department, and the City of Arvada. Docket #3.

14. On June 25, 2009, Magistrate Judge Boland directed the Plaintiff to file an amended complaint within 30 days. Docket #5.

15.     On August 6, 2009, Judge Weinshienk ordered dismissal of the case for Plaintiff's failure to comply with the June 25, 2009 order. Docket #8.

16.     On September 15, 2009, Judge Weinshienk granted Plaintiff's motion to reconsider dismissal and reinstated the case. Docket #13.

17.     On October 14, 2009, the Plaintiff filed an Amended Complaint in accordance with the September 15, 2009 order. Docket #14.

## PROCEDURAL HISTORY

The Plaintiff, proceeding *pro se*,[3] alleges a claim for excessive force in violation of the Fourth Amendment against Defendant Johnson. In response to the Amended Complaint, Defendant filed the within motion to dismiss the Plaintiff's claim as barred by the applicable two-year statute of limitations. Docket #24. Plaintiff responded to the motion arguing that he is entitled to equitable tolling of the limitations period based upon his mental and physical incapacities. Docket #46. Plaintiff attached to his response copies of documents supporting his position. *Id.* Consequently, pursuant to Fed. R. Civ. P. 12(d), the Court notified the parties of the conversion of the motion to dismiss to a Rule 56 motion for summary judgment. Docket #48. Defendant filed a supplemental brief in support of the motion (docket #51); however, at the Scheduling Conference held May 6, 2010, the Plaintiff notified the Court that he intended not to file any further briefing or documents.

However, upon notice that Plaintiff's response appeared to be incomplete, *see* docket #46 at 2-3, the Court granted time for the Plaintiff to supplement his response with information that may be missing. Docket #56. The Plaintiff timely filed a Supplement to this response dated June 3, 2010; the Court notes that the only additional information provided by Plaintiff is an argument pursuant to Fed. R. Civ. P. 6(b)(1)(B). Docket #58.

---

[3]On November 24, 2009, this Court granted Plaintiff's motion seeking volunteer counsel in this case and placed the case on the volunteer list maintained by the Clerk of Court. Docket #28.

**DISCUSSION**

I.   **Standard of Review**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). However, the non-moving party has the burden of showing that there are issues of material fact to be determined. *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v.*

*Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II. Treatment of a Pro Se Plaintiff's Action

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## III. Analysis

Defendant moves the Court for an order dismissing Plaintiff's claim as barred by the statute of limitations applicable to a 42 U.S.C. § 1983 action. Drawing all inferences in the light most favorable to the Plaintiff and construing his pleadings liberally as I must, I find that Plaintiff has demonstrated a genuine issue of material fact that prevents the Court from granting summary judgment at this stage of the proceeding.

An action brought pursuant to 42 U.S.C. § 1983 is subject to the statute of limitations of the

6

general personal injury statute in the state where the action arose. *Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994) (citing *Wilson v. Garcia,* 471 U.S. 261 (1985) (§1983 actions are subject to statute of limitation provided for general personal injury actions in state where action arose)). The applicable statute of limitations in Colorado is two years. *Id.*; *see also* Colo. Rev. Stat. § 13-80-102.

Federal law, not state law, controls the issue of when a federal cause of action accrues. *Industrial Constructors Corp.*, 15 F.3d at 968; *see also Baker v. Board of Regents of the State of Kansas,* 991 F.2d 628, 632 (10th Cir. 1993); *Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir. 1987). The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action. *United States v. Kubrick,* 444 U.S. 111, 121 (1979); *Baker,* 991 F.2d at 632; *Bradley v. United States*, 951 F.2d 268, 270 (10th Cir. 1991); *Ohio v. Peterson, Lowry, Rall, Barber & Ross,* 651 F.2d 687, 692 (10th Cir.), *cert. denied,* 454 U.S. 895 (1981). A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Peterson,* 651 F.2d at 692.

Here, the circumstance giving rise to the lawsuit occurred on January 3, 2007. The Plaintiff initiated the lawsuit on June 4, 2009, outside of the limitations period. *See* dockets #1 and #3. Once a defendant satisfies its initial burden to show that a claim is untimely, the burden shifts to the plaintiff to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date. *See, e.g., Olson v. Federal Mine Safety & Health Review Comm'n,* 381 F.3d 1007, 1014 (10th Cir. 2004) (citing *Aldrich v. McCulloch Props., Inc.,* 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

The accrual date of Plaintiff's claims may be tolled by either statute or equity. Although federal law controls the accrual date in a Section 1983 action, state law controls the tolling of a state

statute of limitations.[4] *See Hardin v. Straub,* 490 U.S. 536, 539 (1998) (finding that "[l]imitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules") (quotations omitted); *accord Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir. 2006). Pursuant to Colorado's applicable statute, a statute of limitations may be tolled if the claimant is "a minor under eighteen years of age, a mental incompetent, or a person under other legal disability." Colo. Rev. Stat. § 13-81-101(3).

In addition, Colorado recognizes that equitable tolling may suspend the running of the limitations period "when flexibility is required to accomplish the goals of justice." *Fogle*, 435 F.3d at 1258 (quoting *Morrison v. Goff,* 91 P.3d 1050, 1053 (Colo. 2004)). Equitable tolling may be applied in situations where "either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094 (Colo. 1996); *see also Gognat v. Ellsworth*, 224 P.3d 1039, 1049 (Colo. App. 2009) (equitable tolling applied where defendant's wrongful conduct prevented timely filing or where extraordinary circumstances rendered the filing of a claim within the limitations period impossible).

Because tolling is an equitable remedy, its application involves an examination of the facts and circumstances of individual cases to determine when equity requires such a remedy. *Morrison,* 91 P.3d at 1057. Notably, the Colorado Supreme Court confirmed recently that, "since stating in *Dean Witter Reynolds* that extraordinary circumstances may toll the statute of limitations, this court has never found such circumstances to exist." *Brodeur v. American Home Assurance Co.*, 169 P.3d 139, 150 (Colo. 2007) (en banc) (holding that awaiting the result of another case or legal proceeding

---

[4]Defendant cites *Marsh v. Soares*, 223 F.3d 1217 (10th Cir. 2000) for elements required to demonstrate equitable tolling; however, the opinion in *Marsh* addresses tolling of a <u>federal</u> statute, 28 U.S.C. § 2244(d), and, thus, is not necessarily applicable to this case.

8

is not the type of extraordinary circumstance necessary to equitably toll the statute of limitations).[5] However, the Colorado Supreme Court has applied equitable tolling to a case where the plaintiff's mental incapacity resulting from defendant's "wrongful conduct" - assault and battery - prevented the timely filing of assault and battery charges against the defendant. *See Dean Witter Reynolds*, 911 P.2d at 1096 (citing *Klamm Shell v. Berg*, 441 P.2d 10 (Colo. 1968)).

In this case, the Plaintiff argues that "not only was he physically unable, but mentally incapable of timely filling [sic] his civil action § 1983 complaint with this Court while still in the hospital under the care of physician Dr. Michael L. Blei, M.D." Docket #46 at 2. The Plaintiff has the burden to prove that his disability prevented him from timely filing the lawsuit. *Robinson v. City & County of Denver*, 16 F. App'x 862, 863 (10th Cir. 2001) (unpublished) (citing *Overheiser v. Safeway Stores, Inc.*, 814 P.2d 12, 13 (Colo. Ct. App. 1991)) ("[t]he party alleging the disability bears the burden to prove that the condition existed.").

According to his medical record,[6] the Plaintiff was mentally incapacitated from January 3, 2007 (the date of the shooting) through January 8, 2007, the date of a letter written by hospital staff asserting that the Plaintiff had been "on a ventilator, and sedated, and is in critical condition," and remained that way at the time of the writing. The Plaintiff was eventually transferred to Denver Health Medical Center for "inpatient rehabilitation" on February 12, 2007, but there is no indication in the letter as to whether he remained on a ventilator or under sedation at that time. In addition, according to a March 13, 2007 letter drafted by Dr. Blei at Denver Health, there is no mention of

---

[5]The court explains that "extraordinary circumstances" have been found in other jurisdictions in the following situations: (1) the courts in southern states were closed during the Civil War, (2) the plaintiff was interned by Japan during World War II, and (3) a district court's erroneous enforcement of an unconstitutional statute barred the plaintiff from filing claims in a timely manner. *Brodeur*, 169 P.3d at 150.

[6]The Defendant does not dispute the admissibility of the exhibits attached to Plaintiff's response for purposes of the within motion.

mental incapacity at that stage of the Plaintiff's recovery. However, Dr. Blei lists several physical impairments, including the Plaintiff's paraplegia, and asserts that the Plaintiff "will likely be hospitalized for several more months." Docket #46 at 6. In fact, the record reflects that Plaintiff remained hospitalized in rehabilitation until, at least, July 19, 2007, according to a subsequent letter written by Dr. Blei. There is nothing in the July 19, 2007 letter indicating that the Plaintiff was mentally incapacitated. Thereafter, according to the Plaintiff, he was transferred to a nursing home in August 2007.

While there may be nothing mentioned in the letters indicating mental incapacity after the February/March 2007 time frame, the Plaintiff contends that he was incapacitated due to the medication he received while hospitalized. Docket #46 at 2; docket #58 at 5. He provides a September 23, 2008 list from Swedish Medical Center of medications taken by or administered to him. Docket #46 at 10.

As stated above, mental incapacity may serve to toll Colorado's statute of limitations. If a person is "under disability" and without a legal representative, the statute of limitations does not begin to run against that person until either the disability is removed or that person has a legal representative. Colo. Rev. Stat. § 13-81-103; *see also Southard v. Miles, supra.* As pertinent here, under Colo. Rev. Stat. § 13-81-101(3), a "person under disability" includes "a mental incompetent." In *Southard v. Miles, supra,* the court stated that in determining whether a person is a "mental incompetent" under § 13-81-101(3), courts must apply the definition of a "mental incompetent" provided in Colo. Rev. Stat. § 27-10.5-135(1). Section 27-10.5-135(1) states, in pertinent part, that a "mental incompetent" is a person who is "mentally ill" or "gravely disabled" as defined in Colo. Rev. Stat. § 27-10-102(5), (7).

A person who is "gravely disabled" "[l]acks judgment in the management of his resources

and in the conduct of his social relations to the extent that his health or safety is significantly endangered and lacks the capacity to understand that this is so." Colo. Rev. Stat. § 27-10-102(5)(a)(II). Additionally, a person is "mentally ill" if that person has "a substantial disorder of the cognitive, volitional, or emotional processes that grossly impairs judgment or capacity to recognize reality or to control behavior." Colo. Rev. Stat. § 27-10-102(7); *but see Browne v. Smith*, 205 P.2d 239 (Colo. 1949) (court need not adjudge the plaintiff "insane" to toll statute of limitations on the basis of mental incapacity).

Here, the Plaintiff must demonstrate an issue of fact[7] as to whether the limitations period, which commenced on January 3, 2007, was tolled until, at least, June 4, 2007 for his lawsuit to be timely filed.[8] According to the record, there is no dispute that the Plaintiff was hospitalized until, at least, July 12, 2007.

In *Klamm Shell v. Berg*, 441 P.2d 10 (Colo. 1968), the court found that the applicable statute of limitations was tolled where the defendant's assault and battery of the plaintiff caused her to become mentally incompetent and committed to a state hospital for three years. *Id.* at 546. Plaintiff makes no such allegation here. Moreover, the Plaintiff cites, and the Court has found, no federal or state cases in Colorado holding that a physical impairment itself (without an accompanying mental impairment) is sufficient to toll the statute of limitations. However, Plaintiff asserts that the medications taken by and administered to him "daily" while hospitalized "left [him] in a mental

---

[7]"The question of whether a plaintiff should have discovered the basis of his suit under the doctrine of equitable tolling does not lend itself to determination as a matter of law." *Aldrich v. McCullough Properties, Inc.*, 627 F.2d 1036, 1042 (10th Cir. 1980).

[8]Because the Court concludes that Plaintiff demonstrates an issue of material fact as to whether the limitations period should be tolled while he was hospitalized until July 2007, the Court need not engage in an analysis of whether the lawsuit commenced, for statute of limitations purposes, on June 4, 2009 when he filed his motion for leave to proceed in forma pauperis or June 15, 2009 when he filed his initial Complaint.

capacity of nil." Docket #46 at 2; docket #58 at 5.

In a similar case, the Tenth Circuit reversed a judgment on the pleadings in favor of the defendant where the plaintiff alleged physical and mental injuries caused him to be unable to timely file his lawsuit. *See Armbeck v. Quinones*, 232 F.3d 900, 2000 WL 1672594 (10th Cir. Nov. 7, 2000) (unpublished). In *Armbeck*, the plaintiff was a *pro se* prisoner who alleged two Denver police officers used excessive force when arresting him. *Id.* at *1. He claimed that the officers had inflicted head injuries which rendered him unconscious and that, as a result, he spent three days in a hospital and three months in a jail infirmary, during which time he was heavily medicated. *Id.* In reversing the lower court's judgment for defendants on the pleadings, the Tenth Circuit found that the trial court improperly resolved fact issues contrary to the plaintiff and failed to construe his pleadings liberally. *Id.* Citing the Colorado Supreme Court's opinion in *Klamm Shell*, *supra*, the court concluded that "fact issues exist as to whether defendants' alleged wrongful conduct prevented [the plaintiff] from being able to timely assert his claims." *Id.* at *2.

Likewise, in this case, the Plaintiff asserts that he was (and is) receiving medications that affected his mental capacity. The hospital record provided by the Plaintiff reflects that, upon admission to Swedish Medical Center in September 2008 (more than 20 months after the shooting), Plaintiff had been on three medications, including the pain reliever, Percocet, indicating a prescription for 1-2 tablets every 4-6 hours. Docket #46 at 10. Plaintiff's factual assertion, supported by the record and unrebutted by the Defendants, is sufficient to raise a question as to whether the statute of limitations should be tolled during the pendency of his hospitalization and the administration of such medications. However, the record is insufficient at this stage of the litigation to resolve the question on summary judgment.

Therefore, because the Plaintiff provides evidence that raises a question as to whether he was

"under disability" sufficient to toll the statute of limitations until June 4, 2007, the Court concludes that summary judgment is improper with an undeveloped record at this stage of the litigation.

## **CONCLUSION**

The Plaintiff has raised an issue as to whether he was sufficiently mentally incapacitated to toll the statute of limitations during the time he was hospitalized under a doctor's care. Accordingly, pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, I therefore RECOMMEND that Defendant's Motion to Dismiss Based on the Statute of Limitations and Fed. R. Civ. P. 12(b)(6) [filed November 12, 2009; docket #24], which was converted to a Motion for Summary Judgment on April 23, 2010 [docket #48], be **denied**.

Dated at Denver, Colorado this 11th day of June, 2010.

BY THE COURT:

*/s/ Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge