**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 09-cv-01380-MSK-MEH
consolidated with 11-cv-00490-MSK-MEH**

**DARRELL HAVENS,**

       **Plaintiff,**

v.

**WILLIAM JOHNSON,
MARK MANTYCH,
C.J. BRICKMORE,
R.J. VANDER VEEN,
MIKE ROEMER,
IAN KILDOW,
MILES HEIVLIN,
MARK GRUEBER,
LINK STRATE,
ERIC STRASHEIM,
DON WICK,
ROBERTO RAMIREZ,
ARVADA POLICE DEPARTMENT,
CITY OF ARVADA,
UNKNOWN LAW ENFORCEMENT OFFICERS,
ROBERT WILSON,
DENVER POLICE DEPARTMENT,
CITY AND COUNTY OF DENVER,
BILLY MAYFIELD,
ZACH MURRAY,
SCOTT BEAUVAIS,
KELLY PICERKING,
COLORADO STATE PATROL,
WILLIAM BRIAN SANDY,
COLORADO STATE PARKS,
TODD PACHELLO,
TIM BEALS,
LONE TREE POLICE DEPARTMENT,
CITY OF LONE TREE,
RICARDO HERNANDEZ,
MOUNTAIN VIEW POLICE DEPARTMENT,
TOWN OF MOUNTAIN VIEW,**

**DAVID MICHAUD,**
**BECKY R. LUCERO,**
**MICHAEL E. ANDERSON,**
**DEBORAH C. ALLEN,**
**MICKEY HECKENBACH,**
**REBECCA L. OAKES,**
**CELESTE M. QUINONES,**
**COLORADO BOARD OF PAROLE,**
**STATE OF COLORADO,**
**DENVER METRO AUTO THEFT TEAM, and**
**JOHN DOES 1-30,**

      **Defendants.**

## OPINION AND ORDER GRANTING, IN PART, MOTIONS TO DISMISS

      **THESE MATTERS**[1] come before the Court pursuant to the following motions[2]: the

---

[1] Two separate civil actions by the Plaintiff, 09-cv-1380 and 11-cv-490, were consolidated by the Court on November 3, 2011 **(# 114)**. At that time, the Court anticipated that the cases would proceed under separate identities, based on their own independent pleadings, sharing only a consolidated caption (and such joint administration as may have been appropriate).

      Since then, the Plaintiff has filed a Consolidated Complaint **(# 119)** in 09-cv-1380 that appears to incorporate all of his claims then-pending in 11-cv-490, and all of the Defendants who had pending motions attacking the current pleading in 11-cv-490 appear to have filed similar motions attacking those same claims in the Consolidated Complaint in 09-cv-1380.

      Thus, as far as this Court can ascertain, the Plaintiff has used the Consolidated Complaint in 09-cv-1380 to swallow up 11-cv-490 in its entirety. Rather than attempt to forcibly extract the newer case from the jaws of its older sibling, this Court will accede to the Plaintiff's apparent wish to proceed in only a single case, conducting all further proceedings via 09-cv-1380 and directing the Clerk to close 11-cv-490. The Court has endeavored to ensure that this Order addresses all motions currently pending in 11-cv-490, such that no further proceedings under that case number will be necessary. To the extent that there remain extant issues raised solely in 11-cv-490 following this Order, any Defendant who has made a motion in 11-cv-490 that hereafter remains unresolved is granted leave to refile that motion in 09-cv-1380.

[2] For purposes of convenience of those reviewing the parallel dockets of 09-cv-1380 and 11-cv-490, the Court set forth the docket numbers for the corresponding motions as they appear in the docket of 09-cv-1380 in boldface text, followed by the docket number of that/those motion(s) as it appears in the docket of 11-cv-490 in plain text. To the extent any of the listed the motions in 09-cv-1380 are the subject of referrals to the Magistrate Judge, those referrals are withdrawn.

Colorado Board of Parole, Colorado State Parks, Colorado State Patrol, and State of Colorado's ("the State") Motion to Dismiss **(# 123**; # 175, 210**)**, Mr. Havens' response **(# 196)**, and the State's reply **(# 202)**; Defendants Allen, Anderson, Heckenbach, Lucero, Michaud, Oaks, and Quinones' ("the Parole Board Defendants") Motion to Dismiss **(# 124**, # 212**)**, Mr. Havens' response (# **197)**, and the Parole Board Defendants' reply **(# 204)**; Defendants Beauvais, Mayfield, Murray, Pickering, and Sandy's ("the State Patrol Defendants") Motion to Dismiss **(#126**, # 185, 211**)**, to which Mr. Havens apparently filed no clearly delineated response under 09-cv-1380 (but to which he filed a response under 11-cv-490 at docket # 238), and the State Patrol Defendants' reply **(# 203)**; Defendant Beal's Motion to Dismiss **(# 127**, # 176**)**, Mr. Havens' response **(# 189)**, and Mr. Beal's reply **(# 206)**; Defendants City of Lone Tree and Lone Tree Police Department's ("Lone Tree") Motion to Dismiss **(# 129**, # 173**)**, Mr. Havens' response **(# 191)**, and Lone Tree's reply **(# 205)**; Defendant Ramirez's Motion to Dismiss **(# 130**, # 174**)**, Mr. Havens' response **(# 194)**, and Mr. Ramirez's reply **(# 207)**; Defendants Bickmore, Grueber, Heivilin, Johnson, Kildow, Mantych, Roemer, Strasheim, Strate, and Vander Veen's ("the Arvada Officer Defendants") Motion to Dismiss **(# 132**, #174**)**, Mr. Havens' response **(#190)**, and the Arvada Officer Defendants' reply **(# 208)**; Defendants City of Arvada and Arvada Police Department's ("Arvada") Motion to Dismiss **(# 134**, # 174**)**, Mr. Havens' response **(# 188)**, and Arvada's reply **(# 209)**; Defendant Denver Police Department, City and County of Denver, and Robert Wilson's ("Denver") Motion to Dismiss **(# 137**, # 178**)**, Mr. Havens' response **(# 195)**, and Denver's reply **(# 210)**; Defendant Pachello's Motion to Dismiss **(# 139**, 221**)**, Mr. Havens' response **(# 193)**, and Mr. Pachello's reply **(# 211)**; Defendants Hernandez, Town of Mountain View, and Mountain View Police Department's ("Mountain View") Motion to Dismiss **(# 147**, # 179, 185**)**, Mr. Havens' response **(# 199)**, and Mountain

View's reply **(#212)**; and Defendants Hernandez, Kelly, and Pickering's Motion to Dismiss **(# 180**, # 185)** in their individual capacities, Mr. Havens' response **(# 214)**, and Defendants Hernandez, Kelly, and Pickering's reply **(# 218)**.

## FACTS

As discussed in more detail below, the Consolidated Complaint **(# 119)** is largely conclusory, offering few specific factual allegations. It essentially concerns three instances.

First, on January 3, 2007, members of the Arvada, Denver, Lone Tree, and Mountain View Police Departments, along with members of the Colorado State Patrol, were jointly participating in an Auto Theft Task Force, conducting a sting operation intended to capture unspecified subjects. Mr. Havens states that, as he was driving through the location where the sting was being conducted, his vehicle was rammed by a vehicle driven by Defendant Sandy without apparent justification. The collision initially pinned Mr. Havens' car against a snowbank, but almost immediately, a second vehicle, driven by Defendant Hernandez, struck Mr. Havens' car, freeing it from the snowbank and causing it to "lurch[ ] forward" and collide with a third vehicle occupied by Defendants Bickmore and Mayfield. Mr. Havens contends that when his vehicle hit the third car, Defendant Johnson fired several shots that struck Mr. Havens and caused him severe injuries, including permanent paralysis.

Mr. Havens further contends that following the shooting various individual Defendants "made false statements and falsified evidence and conspired together" to "wrongfully accuse Mr. Havens" of certain crimes. However, the Consolidated Complaint provides no details of what false statements each Defendant made, how each Defendant falsified evidence, or how the Defendants "conspired together." As a result of these statements, Mr. Havens states that he unwillingly plead guilty to unspecified criminal charges and was sentenced to prison.

The third instance allegedly occurred in conjunction with a parole decision. On January 22, 2010 the Colorado Board of Parole allegedly granted Mr. Havens medical parole. Just days before his release, however, Arvada "required"– through unspecified means – that Defendant Michaud and the Board of Parole revoke the offer of parole. Defendants Johnson and Ramirez (and perhaps Defendant Wick) offered to drop opposition to Mr. Havens' parole if Mr. Havens would agree to dismiss this suit and forego any other lawsuits relating to the shooting, but Mr. Havens refused. As a result of Arvada's opposition to his parole, Mr. Havens' medical parole was withdrawn and he remains in custody.

Mr. Havens asserts eleven claims for relief[3]: (i) a claim under 42 U.S.C. § 1983 for violation of his Fourth Amendment right to be free from the excessive use of force, apparently against all of the individual Defendant police officers, as well as against Arvada, Denver, the State, Mountain View, and Lone Tree, based on the ramming of his vehicle and Defendant Johnson shooting him; (ii) a somewhat rambling claim, nominally brought under 42 U.S.C. § 1983 for violation of his Eighth Amendment right to be free from cruel and unusual punishment, apparently brought against Defendant Johnson insofar as "ramming and shooting [Mr. Havens] constituted cruel and unusual punishment"; against unspecified Defendants who "denied his obvious need for immediate medical care . . . and instead told Plaintiff at the scene he would be left to die"; against unspecified Defendant officers for a "conspiracy . . . to convict [him] for a crime he did not commit"; and against Arvada and Defendant Wick for pressuring the Parole Board to deny his medical parole; (iii) a *Monell* claim against Arvada for failing to adequately train and/or supervise Defendant Johnson in the use of deadly force (apparently relating to both

---

[3] For purposes of the Consolidated Complaint, Mr. Havens is represented. Thus, the Court understands the claims to be as designated.

the use of vehicles and firearms); (iv) a claim under 42 U.S.C. § 1983 for violation of Mr. Havens' Fourteenth Amendment right to equal protection, apparently brought against Arvada, Defendant Johnson, insofar as these Defendants "discriminated against Plaintiff . . . and had no rational basis" for some unspecified acts; that the Board of Parole, Ramirez, and Arvada "interfered with and/or breached the contract [Mr. Havens] entered into with the Colorado Board of Parole" to permit him to receive a medical parole; (v) a "claim" under 42 U.S.C. § 1988 that Mr. Havens is entitled to attorney's fees in pursuing this action; (vi) a claim for common-law negligence against Defendant Johnson, and, apparently, all individual Defendant police officers, in that "ramming their vehicles into [Mr. Havens'] vehicle [was] negligent and it was reasonable foreseeable that injuries" to the Plaintiff would result; (vii) a claim apparently asserting that Arvada is liable under the doctrine of *respondeat superior* for actions taken by Defendant Johnson; (viii) a claim of unspecified provenance, titled "Obstruction of Justice," alleging that all of the Defendant police officers "did . . . make false statements and or falsify documents and or persuade or attempt to persuade others persons to make false statements and or falsify documents with the intent that those false statements and or false documents would be used to obstruct justice in a criminal proceeding" against Mr. Havens, resulting in Mr. Havens' wrongful incarceration; (ix) a common-law claim for false imprisonment, apparently against the Parole Board Defendants, arising out of their withdrawal of the offer of medical parole, resulting in Mr. Havens' continued incarceration; (x) a common-law claim for abuse of process brought against Arvada and perhaps Defendants Ramirez and Johnson, based on their attempt to prevent Mr. Havens' parole and offer to withdraw their opposition to parole only if Mr. Havens would abandon his lawsuit(s); and (xi) a common-law claim for civil conspiracy, apparently asserted against all Defendant police officers as well as Arvada, insofar as the officers "entered into a

conspiracy or otherwise conspired and agreed to . . . conceal evidence and cover up their wrongful and willful acts" in order to secure Mr. Havens' incarceration.

The various Defendants have each moved to dismiss the claims against them, in part or whole. The Court will address each Defendants' arguments in support of those motions as part of its analysis.

## ANALYSIS

### A. Standard of review

Most of the Defendants seek dismissal of the claims against them for failure to state a claim under Fed. R. Civ. P. 12(b)(6), among other grounds. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed.[4] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

With regard to what must be pled to avoid dismissal, the Supreme Court in *Ashcroft v.*

---

[4]Mr. Havens has attached numerous documents, including affidavits and other evidentiary material, to many of his responses to the motions. Because these documents fall outside of the scope of material the Court considers on a Rule 12(b)(6) motion, the Court has disregarded them.

*Iqbal*, 129 S.Ct. 1937, 1949 (2009), described the standard that must be met as "facial plausibility." In this context, "plausibility" refers to the scope and degree of specificity of the allegations in the complaint. *Khalik v. United Air Lines*, ___ F.3d ___, 2012 WL 364058 (10th Cir. Feb. 6, 2012). Although Fed. R. Civ. P. 8(a)(2) still requires the pleader to supply only "a short and plain statement of the claim," that statement must provide more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or generalized allegations of conduct that "encompass a wide swath of conduct, much of it innocent." *Id.* In this regard, the plaintiff must do more than articulate a set of facts that could "conceivabl[y]" or "possibly" give rise to a claim; he must "nudge[ ] his claims across the line from conceivable to plausible." *Id.* Of course, the degree of specificity that will be required will necessarily vary based on the context of the case. *Id.*

*Iqbal* suggests that one way for the Court to proceed when considering a Rule 12(b)(6) motion is for the Court to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. 129 S.Ct. at 1950. The Court's factual recitation set forth above is an attempt to do so. Once the complaint has been winnowed down to only those sufficiently-specific, non-conclusory factual allegations, the Court treats those allegations as true and proceeds to examine whether, under the controlling law, those facts are sufficient to state a claim.

The Court's factual recitation excludes conclusory statements.For example, the Court has disregarded a standard phrasing employed by Mr. Havens that attempts to sweep every possible law enforcement officer defendant into otherwise specific factual averments, such as where Mr. Havens states that Defendant Johnson "and/or another Defendant named herein or other as of yet unidentified law enforcement officer(s), which include the Defendant law enforcement officers

named herein" fired shots at Mr. Havens. Such pleading is sufficient to allege that Defendant Johnson fired shots, but the Court declines to read this averment to state a claim by Mr. Havens that any of the other law enforcement Defendants fired shots as well. At best, Mr. Havens' generic assertion that other law enforcement Defendants might also have fired shots offers nothing more than the speculation that these other Defendants "conceivably" or "possibly" fired additional shots; it does not "nudge such claims" into the realm of "plausible."

Similarly, the Court has disregarded the Plaintiff's conclusory assertions of a "conspiracy" among the Defendants to fabricate evidence or statements, as the Plaintiff has pled nothing more than a "formulaic recitation" of the elements of a conspiracy. *See Iqbal*, 556 U.S at 1951, *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("[T]erms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation—for example, identifying a written agreement or even a basis for inferring a tacit agreement, ... but a court is not required to accept such terms as a sufficient basis for a complaint") (*quoting DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999). Without factual allegations identifying the agreement that was formed among the Defendants and the concerted action that they took to bring about the object of that agreement, bare allegations of "a conspiracy" or "an agreement" are insufficient. *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010) (mere assertion that there were unspecified inconsistencies in officers' various incident reports about the same event insufficient to establish alleged conspiracy among officers).

### B. Viable claims

Given the paucity of sufficiently-specific factual assertions in the Consolidated Complaint, the Court will forego its regular practice of addressing each Defendant's motion

separately. Instead, the Court finds it more efficient to address Mr. Havens' claims *seriatim*, identifying which, if any, Defendants the Consolidated Complaint sufficiently states that claim against.

        1. § 1983 excessive force claim

A § 1983 excessive force claim lies where a state actor effecting an arrest or detention resorts to a level of force that is unreasonable under the circumstances. *Henry v. Storey*, 658 F.3d 1235, 1242 (10th Cir. 2011).

Mr. Havens has alleged two types of force used against him: Defendants Sandy and Hernandez each allegedly rammed Mr. Havens' car with their vehicles for no apparent reason, and Defendant Johnson fired shots that struck Mr. Havens. Both of these types of force have been found to support § 1983 excessive force claims in appropriate circumstances. *See generally Scott v. Harris*, 550 U.S. 372 (2007) (analyzing excessive force claim where police rammed defendant's vehicle during chase); *Tennessee v. Garner*, 471 U.S. 1 (1985) (excessive force claim resulting from police shooting of suspect). Thus, the Court finds that Mr. Havens' allegations that these particular Defendants employed the specifically-identified forceful acts against him, coupled with his assertion that there was no ostensible justification for such use of force, to be sufficient at the pleading stage to state a § 1983 excessive force claim against Defendants Johnson, Sandy, and Hernandez.

The Court does not find that Mr. Havens has adequately alleged a colorable excessive force claim against any other Defendant, however. The Consolidated Complaint contains no specific allegations that any of the other law enforcement officer Defendants engaged in either a vehicular or weapon-based use of force against Mr. Havens. Although Mr. Haven contemplates the possibility that others besides Defendant Johnson may have fired weapons at him,

speculation as to what <u>might</u> have occurred is insufficient to meet *Iqbal*'s "plausibility" standard.

        2. Eighth Amendment claim

The Court has some difficulty in understanding Mr. Havens' ostensible claim for cruel and unusual treatment brought under the Eighth Amendment. In general, the Eighth Amendment is understood to afford rights to prisoners only upon the imposition of sentence; cruel and inhuman treatment administered between the filing of charges and the time of trial is generally understood to implicate a defendant's Due Process rights stemming from the 5th and 14th Amendments; and adverse treatment occurring prior to the lodging of charges is generally considered to be within the scope of the arrest of the person and thus assessed under the Fourth Amendment's "reasonable seizure" standard. *Bell v. Wolfish*, 441 U.S. 520, 535-36 & n. 16 (1979); *Brosseau v. Haugen,* 543 U.S. 194, 197 (2004); *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010). The "cruel and unusual treatment" most evident in Mr. Havens' allegations relate to the circumstances under which he was arrested, and in this sense, such a claim would be entirely duplicative of his excessive force claim, which also arises from the Fourth Amendment.

Mr. Havens' various response briefs do little to clarify address this issue. He acknowledges the Defendants' arguments that the Eighth Amendment applies only to inmates who have been sentenced upon conviction, but he argues – without any supporting citation or further explanation – that "such limitations are not contained in the Eighth Amendment." As the citations above make clear, this argument is without merit. He further argues, again without citation, that he was "in custody" as soon as he ventured into the area where the Defendants were conducting the sting operation, but, as discussed above, the relevant constitutional inquiry is whether charges had been lodged against him and whether he had been convicted and sentenced on such charges. Accordingly, the Court can conceive of no Eighth Amendment claim – or any

other constitutional claim – that would address the events leading up to and including the shooting of Mr. Havens that would not entirely duplicate his excessive force claim.

Mr. Havens also makes a perfunctory argument that his Eighth Amendment claim also applies "to the wrongful revocation of his medical parole." Mr. Havens offers no meaningful explanation of his theory as to how his continued incarceration on an undischarged sentence constitutes "cruel and unusual punishment." Accordingly, all Defendants are entitled to dismissal of the purported Eighth Amendment claim.

### 3. *Monell* claim

Is it not entirely clear to the Court whether Mr. Havens intends to bring the third claim, sounding in municipal liability under *Monell*, against Arvada based on its failure to train Defendant Johnson, or whether he also brings that claim against the entities that employed and supervised Defendants Sandy and Hernandez as well. For purposes of this discussion, the Court will assume the latter.

*Monell* ensures that municipalities are not held vicariously liable for the unlawful acts of their employees under simple *respondeat superior* principles. *Monell v. Dept. of Social Services,* 436 U.S. 658, 691 (1978). Rather, municipal liability only arises when some official act (or failure to act) by the municipality itself caused or motivated the employee's unlawful act, such that the municipality can be said to be independently liable for its own conduct that brought about the injury. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Mr. Havens has invoked *Monell* by name and primarily offers a formulaic recitation that each of the employing agencies "failed to train, supervise and discipline their police officers . . . regarding the use of deadly force." But beyond that formulaic recitation, Mr. Havens has not alleged any specific facts that would nudge this claim from the possible to the probable. He does

not allege that the Defendant entities' training programs have any affirmative constitutional deficiencies – *i.e.* that they are drafted in such a way as to encourage the use of force where circumstances do not warrant it. Instead, he appears to allege solely that the individual Defendant officers were not properly trained to follow otherwise constitutionally-compliant use of force policies enacted by the employing entities. Where the allegedly unconstitutional municipal custom or policy is a failure by the municipality to train or supervise police officers, a plaintiff must allege facts sufficient to demonstrate that such failures amount to "deliberate indifference to the rights of persons with whom the police come into contact." *Walker v. City of Orem*, 451 F.3d 1139, 1153 (10th Cir. 2006). To satisfy the deliberate indifference standard, Mr. Havens must ultimately show that "the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003). The touchstone of this inquiry is "the risk inadequate training poses and the [entity's] awareness of that risk," typically by showing "that the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [entity] can reasonably be said to have been deliberately indifferent to the need." *Id.*

Even assuming that Mr. Havens has adequately alleged that the agencies employing Officers Johnson, Sandy, and Hernandez maintained policies regarding the use of deadly force but failed to adequately train or supervise the officers with regard to those policies – a finding this Court does not make – Mr. Havens has nevertheless failed to allege facts that would demonstrate that such failure occurred in circumstances that could lead the factfinder to conclude that such a failure to train or supervise reflected deliberate indifference on the part of those

agencies. He has not alleged any facts that would support an inference that those entities were: (i) aware that their training or supervision programs were not being adequately administered; and (ii) were nevertheless deliberately indifferent to the risk of constitutional deprivation that would result from these inadequacies. Without sufficiently-specific factual allegations on these points, Mr. Havens' *Monell* claims are deficient and thus are dismissed against all entity Defendants.

        4. Equal Protection claim

The precise theory behind Mr. Havens' Equal Protection claim is unclear. The Consolidated Complaint begins its discussion of this claim by quoting 42 U.S.C. § 1981, a statute that prohibits racial discrimination in the making and enforcement of contracts. It goes on to allege that Arvada and Defendant Johnson "discriminated" against Mr. Havens – the basis upon that discrimination was based is entirely unclear – and that they "had no rational basis" for, presumably, opposing his request for medical parole.

The Court begins by noting that, to the extent this claim seeks to invoke 42 U.S.C. §1981, Mr. Havens' claim is defective. To plead such a claim, Mr. Havens must allege, among other things, that he was discriminated against on the basis of his race in the formation or execution of a contract. *Thornton v. Kaplan*, 937 F.Supp. 1441, 1446-47 (D.Colo. 1996). Mr. Havens alleges that he signed a written parole agreement with the Colorado Department of Corrections on February 1, 2010, and as Mr. Havens does, the Court will assume, without necessarily finding, that agreement constituted an enforceable contract entitling him to release on parole. The Court will also assume, again without making a finding to this effect, that Mr. Havens' allegations that Arvada and Defendants Johnson, Ramirez, and Wick induced the Parole Board to refuse to honor that contract. However, Mr. Havens has pled no facts to suggest that these Defendants were motivated by Mr. Havens' race in doing so; as best the Court can

ascertain, the Consolidated Complaint does not even identify Mr. Havens' race. Even if it did, Mr. Havens' own allegations clearly imply that the Defendants' motivation for preventing his release on parole were the result of animus against Mr. Havens for having filed suit against them, not simply because Mr. Havens was a member of some particular race. Thus, to the extent Mr. Havens intends his Equal Protection claim to assert a violation of 42 U.S.C. § 1981, it plainly fails to state a colorable claim.

Similar reasoning reveals a defect in Mr. Havens' attempt to assert such a claim under the constitution's Equal Protection clause as well. To assert an Equal Protection violation claim, Mr. Havens must allege facts showing: (i) that a state actor has intentionally treated similarly-situated individuals differently because of a particular classification that one of them possessed; and (ii) that such differential treatment lacks appropriate connection to a legitimate governmental purpose. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685-87 (10th Cir. 2012). Essential to such a claim is an allegation by Mr. Havens of facts suggesting that other persons similarly-situated to him were treated more favorably. *Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011). The Consolidated Complaint contains no allegations of anyone similarly-situated to Mr. Havens – that is, an inmate proposed for medical parole – that Arvada or Defendants Johnson, Ramirez, or Wick are alleged to have treated more favorably. Without reference to a similarly-situated comparator who received more favorable treatment, Mr. Havens has failed to adequately allege an Equal Protection claim.[5]

---

[5] Mr. Havens appears to assert a similar Equal Protection claim against the Parole Board itself and its constituent members. The foregoing analysis is sufficient to dispose of any such claim. In addition, Parole Board members enjoy absolute immunity from civil suits arising from their decision to grant or deny parole. *Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir. 1992). Because all of Mr. Havens' purported claims against the Parole Board Defendants arise from their decision to deny his medical parole, all of those claims are subject to dismissal.

5. "Claim" for attorney's fees

Mr. Havens' request for an award of attorney's fees under 42 U.S.C. § 1988 is an item of relief, not a stand-alone "claim." Fees under that statute are only awarded to a plaintiff who prevails on another substantive claim; there is no independent and freestanding "claim" for attorney's fees. If Mr. Havens does indeed prevail on one or more of his claims, he may file a motion for attorney's fees in accordance with Fed. R. Civ. P. 54(d)(2) and D.C. Colo. L. Civ. R. 54.3 at the appropriate time.

6. State law claims

Mr. Havens purports to assert a variety of tort claims under state law against various Defendants, including claims sounding in negligence, malicious prosecution, obstruction of justice, and civil conspiracy. All of these claims sound in tort, and thus, are governed by the Colorado Governmental Immunity Act ("CGIA"), C.R.S. § 24-10-106(1) (deeming public entities immune "from liability in all claims for injury which lie in tort or could lie in tort"); § 24-10-118(1) (applying to "any action against a public employee . . . which lies in tort or could lie in tort"). Among other things, that statute provides that a plaintiff seeking to assert tort claims against a public agency or public employee must first file a Notice of Claim within 180 days of the events at issue.[6] C.R.S. § 24-10-109(1); § 24-10-118(1)(a). The Notice of Claim

---

[6]The Notice of Claim is required regardless of whether the claim alleges "willful and wanton" conduct. C.R.S. § 24-10-109(1) ("Any person claiming to have suffered an injury by a public entity or by an employee thereof . . . whether or not by a willful or wanton act or omission, shall file a written notice. . . ."). Even though Mr. Havens alleges that the individual Defendants acted willfully and wantonly, ostensibly removing them from immunity under the CGIA, the Notice of Claim requirement applies regardless of whether the public employee is ultimately found to be within or outside of the statute's reach. *Middleton v. Hartman*, 45 P.3d 721, 730-31 (Colo. 2002).

Mr. Havens argues that his tort claims are also cognizable under C.R.S. § 29-5-111 (requiring municipalities and entities to indemnify police officers), and thus, "are not limited by the notice provisions of the Immunity Act." *Citing Antonopoulos v. Town of Telluride*, 532 P.2d

requirement is jurisdictional in nature, and is not subject to equitable defenses such as waiver, tolling, or estoppel that would normally apply to statutes of limitations. *City and County of Denver v. Crandall*, 161 P.23d 627, 633 (Colo. 2007).

It is undisputed that Mr. Havens did not file a Notice of Claim with regard to any Defendant within 180 days of the events of January 3, 2007. His Consolidated Complaint contends that his commencement of this action in March 2009 suffices to meet the requirements of a Notice of Claim, and that in any event he filed a formal Notice of Claim on March 1, 2011. Mr. Havens argues that his medical incapacity resulting from the shooting left him unable to function for an extended period of time, thus forgiving his untimely Notice of Claim. This Court has previously determined that accrual of Mr. Havens' claims, for statute of limitations purposes, was tolled as a result of his incapacity under C.R.S. § 13-81-103. But, as noted above, the Notice of Claim requirement is not akin to a statute of limitations; rather, it is a non-claim statute that operates outside the reach of doctrines of tolling. *Mesa County Valley School Dist. v. Kelsey*, 8 P.2d 1200, 1206 (Colo. 2000). Indeed, Colorado courts have squarely determined that the incapacity toll of C.R.S. § 13-81-103 does not excuse noncompliance with the Notice of Claim statute. *McMahon v. Denver Water Bd.*, 780 P.2d 28, 29 (Colo.App. 1989). Because he failed to file a Notice of Claim within the 180 day period, regardless of the reasons why, this Court lacks jurisdiction over any of Mr. Havens' tort claims against any of the Defendants.[7]

---

346, 349 (Colo. 1975). However, since *Antonopoulos*, the CGIA has been amended to expressly provide that the Notice of Claim requirements apply "whether [claims are] brought pursuant to [the CGIA], section 29-5-111, the common law, or otherwise." C.R.S. § 24-10-105(1) (emphasis added).

[7]Not every Defendant raised the untimeliness of Mr. Havens' Notice of Claim in their motions, but because compliance with the Notice of Claim requirement is jurisdictional in nature, the Court may – indeed must – address it *sua sponte* if the parties do not.

## CONCLUSION

For the foregoing reasons, the Motions to Dismiss by the State **(# 123)**; the Parole Board Defendants **(# 124)**; Defendant Beal **(# 127)**; Lone Tree **(# 129)**; Defendant Ramirez **(# 130)**; Arvada **(# 134)**; Denver **(# 137)**; Defendant Pachello **(# 139)**; and Mountain View **(# 147)** are **GRANTED**, and the claims against these Defendants are **DISMISSED**[8] in their entirety. The State Patrol Defendants' Motion to Dismiss **(# 126)** is **GRANTED IN PART**, insofar as all claims against Defendants Beauvais, Mayfield, Murray, and Pickering and the claims against Defendant Sandy other than that for excessive force under § 1983 are **DISMISSED**, and **DENIED IN PART**, insofar as the § 1983 excessive force claim against Defendant Sandy may proceed. The Arvada Officer Defendants' Motion to Dismiss **(# 132)** is **GRANTED IN PART,** insofar as all claims against Defendants Bickmore, Grueber, Heivilin,, Kildow, Mantych, Roemer, Strasheim, Strate, and Vander Veen, and the claims against Defendant Johnson other than that for excessive force under § 1983 are **DISMISSED**, and **DENIED IN PART**, insofar as the § 1983 excessive force claim against Defendant Johnson may proceed. Defendants Hernandez, Kelly, and Pickering's Motion to Dismiss **(# 180)** is **GRANTED IN PART**, insofar as all claims against Defendants Kelly and Pickering, and the claims against Defendant Hernandez other than that for excessive force under § 1983 are **DISMISSED**, and **DENIED IN PART**, insofar as the § 1983 excessive force claim against Defendant Hernandez may proceed.

---

[8]Given the fact that Mr. Havens has already availed himself of several opportunities to amend and refine his pleadings, both as a *pro se* litigant and upon representation by counsel, the Court does not reflexively grant Mr. Havens leave to amend the Consolidated Complaint in an attempt to rescue those claims that might be viable with more specific pleading. If Mr. Havens believes that he can adequately allege additional claims, within 14 days he may file an appropriate motion seeking leave to amend, tendering a proposed amended pleading that clearly and conspicuously indicates the material that is allegedly sufficient to overcome the pleading deficiencies identified here.

The caption of this case is **AMENDED** to omit reference to all Defendants other than Defendants Johnson, Sandy, and Hernandez. The Clerk of the Court is directed to terminate all motions pending in 11-cv-490 and to close that case.

Dated this 13th day of March, 2012

BY THE COURT:

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge