IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01380-MSK-MEH

DARRELL L. HAVENS,

    Plaintiff,

v.

WILLIAM JOHNSON, Detective, in his individual and official capacities,

    Defendant.

## ORDER RE: MOTION TO COMPEL

**Michael E. Hegarty, United States Magistrate Judge.**

    Before the Court is Defendant's Motion to Compel Deposition of Attorney Witness [filed March 21, 2013; docket #338]. By Order of Reference to United States Magistrate Judge, this matter has been referred to me to conduct proceedings in this civil action pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b). The matter is fully briefed, and the Court orders that, for the following reasons, the motion is **granted in part and denied in part**.

### I.    Background

    The facts and background of this case are set forth in the District Court's March 13, 2012 Opinion and Order resolving multiple motions to dismiss the Plaintiff's Consolidated Complaint; thus, this Court need not repeat here the bulk of the case's background. However, this case has had a long and convoluted history so, for purposes of this analysis, the Court will briefly recount the relevant history leading up to the filing of the present motion.

    The Plaintiff, proceeding *pro se*, initiated this action on June 15, 2009, alleging a claim of excessive force in violation of the Fourth Amendment against Defendant William Johnson. Essentially, Plaintiff alleges that on January 3, 2007, he was "rammed" by police undercover

vehicles, then shot several times by Defendant Johnson, which rendered Plaintiff a quadriplegic. On August 23, 2010, Chief Judge Krieger granted Johnson's motion for summary judgment finding Plaintiff's claim barred by the statute of limitations. Plaintiff timely filed a motion seeking relief from judgment pursuant to Fed. R. Civ. P. 59(e) on August 31, 2010. While the motion was pending, attorney William Muhr entered his appearance on behalf of the Plaintiff on April 22, 2011, and moved for leave to file a supplemental brief. Judge Krieger granted the motion and held hearings on the Rule 59(e) motion. On November 3, 2011, Judge Krieger granted the Rule 59(e) motion and vacated her prior August 23, 2010 order. (*See* docket #114.)

Meanwhile, the Plaintiff had filed a related case, then sought to consolidate the case with the present action. Judge Krieger granted the motion to consolidate at the same time she ruled on the Rule 59(e) motion. (*Id.*) Thereafter, on November 22, 2011, this Court held a Status Conference at which the Court set deadlines for discovery as well as for filing a Consolidated Complaint identifying all claims and defendants named in both actions. (Docket #118.) Plaintiff timely filed the Consolidated Complaint on December 6, 2011, and the multiple Defendants responded by filing motions to dismiss.

On March 13, 2012, Judge Krieger issued an Opinion and Order dismissing most of the named Defendants, but denying the request to dismiss Plaintiff's claims of excessive force against Defendants Johnson, Sandy and Hernandez. (Docket #219.) Since that time, the parties agreed to dismiss Defendant Hernandez (docket #327) and Judge Krieger granted Defendant Sandy's motion to dismiss Plaintiff's claim against him (docket #330). Therefore, this action proceeds solely against Defendant Johnson on Plaintiff's claim for excessive force pursuant to 42 U.S.C. § 1983.

This case has proceeded through discovery pursuant to a Scheduling Order issued April 11, 2012 (docket #243) and modified on October 29, 2012 (docket #326). In the present motion,

Defendant seeks an order compelling Plaintiff's former criminal defense attorney, James Aber, to attend a deposition and answer certain questions concerning communications Mr. Aber had with the Plaintiff that the Defendant claims either are not privileged or the Plaintiff has waived any privilege as to such communications.

Plaintiff responds that without specific questions provided by Defendant, by which Plaintiff can determine whether they seek privileged information, any motion to depose Mr. Aber should be denied. Further, Plaintiff contends that Defendant should have sought the information directly from the Plaintiff, since he is the holder of the privilege. Plaintiff also argues that Defendant's case law does not support Defendant's position that certain information is not privileged and that statements made by Mr. Aber at a sentencing hearing justify disclosure of otherwise privileged information. Finally, Plaintiff asserts that he did not waive entirely his attorney-client privilege at his deposition, by having third parties present during communications with Mr. Aber or by filing a post-conviction motion in state court alleging ineffective assistance of counsel against Mr. Aber.

Defendant replies that by arguing Defendant has failed to support his positions with applicable case law, Plaintiff improperly shifts the burden to establish the non-applicability of the privilege and the waiver of a privilege to Defendant. Further, Defendant re-asserts his arguments that the information he seeks from Mr. Aber either is not privileged or the privilege has been waived as to such information. The Court has reviewed the motion, the briefing and all attachments and is now fully advised as to the issues raised.

**II.     Analysis**

Defendant seeks information from Mr. Aber that Defendant contends is not privileged, including: how many times Mr. Aber met with Plaintiff; where those meetings occurred; who was present during those meetings; the subject matter of those meetings; whether Mr. Aber had

knowledge of the medications Plaintiff was taking at the time of the meetings and the plea hearing; whether Plaintiff slept during the meetings or the plea hearing; and whether Plaintiff fully participated in the plea hearing. Motion, ¶ 8, docket #338 at 3. Further, Defendant argues the following information is not privileged, because Plaintiff communicated it to Mr. Aber, who then repeated the information to the court during Plaintiff's plea hearing: Plaintiff's mental acuity and memory of the incident from the first time he met with Mr. Aber through the time of the plea hearing; Mr. Aber's knowledge of the medications Plaintiff took prior to and at the time of the hearing; what he and Plaintiff discussed as to a "fair and equitable way" to resolve the case; what discovery he gave Plaintiff and what Plaintiff had gone over and how he did so; whether Plaintiff understood prior to the plea hearing what was going to happen and what was going to be said during the hearing; and what Plaintiff stated he was sorry for and when he made that statement. *Id.*, ¶ 11, at 4-5.

In addition, Defendant argues Plaintiff waived his privilege when he disclosed communications between Plaintiff and Mr. Aber concerning any statements Plaintiff made regarding how the incident occurred; any admissions of fault; whether Plaintiff assaulted or attempted to assault Defendant; whether Mr. Aber pushed the plea deal and why the plea was a good deal for Plaintiff; what defenses Plaintiff lacked against the police and why; and whether he stated that he was not comfortable going to trial with Plaintiff and, if yes, why. *Id.*, ¶ 16, at 6. Moreover, Defendant asserts Plaintiff waived his privilege during meetings where third parties were present, and when Plaintiff filed a post-conviction motion challenging the effective assistance of Mr. Aber during his criminal proceedings. With respect to the latter waiver, Defendant argues Plaintiff waived any privilege concerning his allegations that Mr. Aber: "accepted the police version of the incident"; "conducted no independent inquiry into the events surrounding the shooting"; "sought

4

only to persuade [Plaintiff's] family that [Plaintiff] had no choice but to accept" a plea deal; "knew that [Plaintiff] was heavily medicated at the time of his plea and ... had no memory of the shooting"; "knew that [Plaintiff] was under the influence of morphine-based narcotic painkillers and strong muscle relaxants and did not know what was going on around him," but represented to the criminal court that Plaintiff was "not under the influence of any ... medication"; Plaintiff "was mentally incompetent when his guilty plea entered"; Plaintiff's medications "substantially interfered with his mental capacity" and as a result he "had no memory of the shooting incident and nodded off during most of the hearing"; "sign[ed] an affidavit falsely stating that [Plaintiff] was not under the influence of any drugs at the time of the hearing"; agreed to a plea agreement that "falsely states that [Plaintiff] was not under the influence of any medication at the time the plea was taken"; "misrepresented to [Plaintiff"s] family that [Plaintiff] had no defense to the charges [ ] and then coerced [Plaintiff] (who was mentally incapacitated due to his pain medications) to plead guilty"; "never conducted any investigation into the numerous conflicting statements"; "never questioned any of the charges filed against" Plaintiff; and "made no arguments at the hearing questioning the charges ... nor raised any defenses." *Id.*, ¶ 21, at 9.

The Court will begin by analyzing whether Plaintiff has demonstrated the privilege applies to the communications identified by Defendant and listed in the first paragraph above. Next, the Court will determine whether Plaintiff establishes he did not waive any privilege as to the communications described by the Defendant and listed in the second paragraph above.

    A.    <u>Application of the Privilege</u>

The Court notes first that, while the primary issue raised here is whether communications between Mr. Aber and the Plaintiff are privileged, the Plaintiff also questions the relevance of

5

allegedly non-privileged information sought by the Defendant. Response, docket #341 at 10.[1] The Court broadly construes relevancy, and a request for discovery should be considered relevant if it is possible that the information sought may be relevant to the claim or defense of any party. *Bonanno v. Quizno's Franchise Co.*, 255 F.R.D. 550, 552 (D. Colo. 2009). When the requested information appears to be relevant, the party objecting to the discovery has the burden to establish the information is irrelevant by demonstrating the information does not come within the scope of relevance as defined by Fed. R. Civ. P. 26(b)(1), or is of such marginal relevance that the harm in producing the information outweighs the presumption in favor of broad disclosure. *Id.* (citing *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004)). "Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Hammond v. Lowe's Home Ctrs. Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003); *see also Bonanno*, 255 F.R.D. at 553. Thus, the Court will determine first whether relevancy of Defendant's requested discovery is readily apparent; if so, the Court will proceed to determine whether Plaintiff has established the attorney-client privilege applies.

Rule 501 of the Federal Rules of Evidence controls the determination of privilege issues in federal court. Fed. R. Evid. 501 states,

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be

---

[1] It also appears that Plaintiff questions the propriety of deposing the former attorney of a party in the case; however, neither Rule 26 nor Rule 30 prohibit the deposition of such person. *See* Fed. R. Civ. P. 26 and 30.

6

determined in accordance with State law.

*Id.* Here, Plaintiff alleges jurisdiction pursuant to 28 U.S.C. § 1331 governing federal questions. Therefore, pursuant to Fed. R. Evid. 501, federal common law concerning privilege governs this dispute.

The attorney-client privilege "protects communications made in confidence between the client and the attorney from discovery, but it does not protect the underlying facts contained within those communications." *EEOC v. Outback Steakhouse of Florida*, 251 F.R.D. 603, 610 (D. Colo. 2008). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). To be covered by the attorney-client privilege, "a communication between a lawyer and client must relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998). "The party seeking to invoke the attorney-client privilege bears the burden of establishing its applicability and the lack of waiver of any privilege." *Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D. 632, 635 (D. Colo. 2012) (citing *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999)).

As applies to this case, under federal common law, the attorney-client privilege arises (1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) unless the protection is waived. *See Great Plains Mut. Ins. Co., Inc. v. Mutual Reinsurance Bur.*, 150 F.R.D. 193, 196 (D. Kan. 1993) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir.), *cert. denied sub nom*, 506 U.S. 1034 (1992)).

With these standards in mind, the Court concludes that the relevance of how many times Mr. Aber met with Plaintiff, where those meetings occurred, who was present during those meetings, and the general subject matter of those meetings is not readily apparent as to the claims or defenses raised in this case. Defendant fails to make any argument concerning the relevance of this discovery; without such information, the Court cannot conclude that the requested discovery meets the requirements of Fed. R. Civ. P. 26(b).

However, the Court concludes that communications concerning whether Mr. Aber had knowledge of the medications Plaintiff was taking at the time of the meetings and the plea hearing; whether Plaintiff slept during the meetings or the plea hearing; and whether Plaintiff fully participated in the plea hearing are relevant to Defendant's statute of limitations defense and do not constitute confidential communications nor relate to legal advice. Defendant may depose Mr. Aber as to these particular issues. Plaintiff's confidential communications with Mr. Aber at the meetings or the plea hearing, though, including any discussions concerning medications, Plaintiff's health or Plaintiff's criminal case, may be subject to the attorney-client privilege.

Defendant also contends that Mr. Aber disclosed to the court during Plaintiff's plea hearing certain communications from the Plaintiff concerning the following issues: Plaintiff's mental acuity and memory of the incident from the first time he met with Mr. Aber through the time of the plea hearing; Mr. Aber's knowledge of the medications Plaintiff took prior to and at the time of the hearing; what he and Plaintiff discussed as to a "fair and equitable way" to resolve the case; what discovery he gave Plaintiff and what Plaintiff had gone over and how he did so; whether Plaintiff understood prior to the plea hearing what was going to happen and what was going to be said during the hearing; and what Plaintiff stated he was sorry for and when he made that statement. Defendant contends Mr. Aber's testimony regarding these issues is relevant as to "Plaintiff's ability to recall

the events of January 3, 2007, Plaintiff's credibility, and whether Plaintiff was under a disability for statute of limitations purposes." Motion, ¶ 12, docket #338 at 5.

Defendant points to the following statements from Mr. Aber to support his argument that Plaintiff gave information to Mr. Aber with the intent or understanding that it would be repeated to the court[2]:

(1)  In response to the court's question to Plaintiff whether the events of January 3, 2007 as stated in the police report were "what happened," Mr. Aber answered, "Mr. Havens, unfortunately, has no memory of this because of the serious injuries that he suffered that night." Transcript of October 9, 2008 Hearing before the Honorable Lily Oeffler, Exh. B to the motion, 11: 17-25, 12:1-19, docket #338-1 at 12-13.

(2)  During the plea hearing, Mr. Aber stated to the court, "One last thing that Mr. Havens did express to me, was he wanted the Court to know ... at the time of this incident he was still suffering from the effects of the prior accident that was mentioned. And so he didn't necessarily have full control of his arms. And he feels that might be one of the reasons why the tires had been spinning. So he just wants the Court to be aware of that fact." *Id.*, 30: 5-15.

(3)  In responding to a request from the court for an "oral record that Mr. Havens, indeed, acknowledges that he committed these crimes and is pleading guilty to them," Mr. Aber told the court, "Your Honor, I can tell the Court that I have gone over and provided Mr. Havens with CD disks that had hundreds of pages of discovery that he's gone over, at least some of that." *Id.*, 11: 1-8.

(4)  During comments to the court related to sentencing, Mr. Aber told the court, "It's been Darrell's desire from day one to resolve this case in some fair and equitable way. And as Darrell's father said, Darrell is sorry for what happened." *Id.*, 17: 19-22.

The Court finds first that relevance concerning what Mr. Aber and Plaintiff discussed as to a "fair and equitable way" to resolve the criminal case, what discovery Mr. Aber gave Plaintiff and what Plaintiff had gone over and how he did so, and what Plaintiff stated he was sorry for and when he stated he was sorry is not readily apparent in this matter, even considering Defendant's argument regarding relevance. Other than summarily asserting such information is relevant as to Plaintiff's

---

[2]*See United States v. Bump*, 605 F.2d 548, 551 (10th Cir. 1979) ("When a matter is communicated to the lawyer with the intention or understanding it is to be repeated to another, the content of the statement is not within the privilege.").

recollection of the events of January 3, 2007, Plaintiff's credibility, or the statute of limitations defense, Defendant makes no further argument that this information will likely lead to the discovery of admissible evidence in this case.

Moreover, although the issue may be relevant, the Court finds that Mr. Aber did not repeat to the court communications he may have had with Plaintiff concerning the medications Plaintiff took prior to and at the time of the hearing, which may have affected whether Plaintiff understood prior to the plea hearing what was going to happen and what was going to be said during the hearing.

However, as set forth above, the Court concludes Mr. Aber repeated to the court relevant communications from the Plaintiff concerning Plaintiff's mental acuity and memory of the January 3, 2007 incident from the time Plaintiff met with Mr. Aber through the time of the plea hearing. Defendant may depose Mr. Aber as to these issues.

### B.     Waiver of the Privilege

Defendant contends that Plaintiff has waived any attorney-client privilege over certain communications with Mr. Aber by disclosing them during his deposition, by meeting with Mr. Aber in the presence of third parties, and by filing a lawsuit against Mr. Aber alleging ineffective assistance of counsel.

Generally, disclosing attorney-client communications to a third party results in a waiver of the attorney-client privilege. *See Sedillos v. Bd. of Educ. of Sch. Dist. No. 1,* 313 F. Supp. 2d 1091, 1093 (D. Colo. 2004) ("the attorney-client privilege can be waived by '[a]ny voluntary disclosure by the client' of an otherwise privileged confidential communication") (quoting *United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989)). "The attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party." *United States v. Ryans,* 903 F.2d 731, 741 n.13 (10th Cir. 1990) (citing *United States v. Bump*, 605 F.2d 548 (10th

Cir. 1979)). The Tenth Circuit admonishes that

> the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant.

*Id.* (quotation and alteration omitted); *see also Bernard*, 877 F.2d at 1465 ("Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege.").

Since 2008, Fed. R. Evid. 502 governs "subject-matter" waiver of the attorney-client privilege in federal question cases. That is, Rule 502 determines whether disclosure of certain communications or information results in a waiver of all communications or information regarding the same subject matter. In relevant part, Rule 502 provides:

> (a) Disclosure made in a Federal proceeding or to a Federal office or agency; scope of a waiver. When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a). The Advisory Committee Note to Rule 502 further explains that "a voluntary disclosure ... generally results in a waiver only of the communication or information disclosed; a subject matter waiver ... is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence." *In re Urethane Antitrust Litigation*, No. 04-MD-1616-JWL, 2011 WL 322675, at *3 (D. Kan. Jan. 31, 2011) (quoting Rule 502 Advisory Comm. Note).

In this case, to the extent that any waiver of a privilege results from disclosures made by Plaintiff at his deposition, the Court finds such disclosure to be intentional. During his deposition, Plaintiff testified,

> I was in and out of the hospital, and Mr. Aber met with me and my family, but I don't remember meeting him or any part of the plea. All I remember is him telling me that if I didn't plead to either attempted murder, two second degree assaults, or second degree assault, aggravated motor vehicle theft, I could either choose one of the three. They all would carry a 20-year stipulated sentence.
>
> And I told him I didn't know why he was trying to get me to plead to any assault, because there was nobody assaulted. Nothing happened to nobody. And he said, "Well, it is the police, and it is their story against yours. So, you take the 20-year deal, or you can go to trial and get 98 years to life. And I don't feel comfortable going to trial with you."

Deposition of Darrell Havens, October 30, 2012 ("Havens depo"), 30: 5-19, docket #338-2 at 4. Moreover, in response to a question whether Mr. Aber was discussing possible pleas with Plaintiff at his dad's house, Plaintiff asserted,

> It was more with my family, because like I said, I was pretty falling in and out, and he – I was in and out of the hospital, and that is why he came to my dad's girlfriend's house, because he was pushing for me to take the plea, and I was missing court hearings because I was in the hospital, because I was having numerous infections, after infection, after infection. So, he came out there to push the plea.

*Id.*, 31: 20-25, 32: 1-4. Plaintiff also testified that "Mr Aber told me that since it was the police, I would not have a defense against the police." *Id.*, 33:1-2, docket #338-2 at 5. Further, in response to a question whether Plaintiff told Mr. Aber what he repeated during the plea hearing concerning Plaintiff's lack of memory of the January 3, 2007 incident, Plaintiff testified, "I told [Mr. Aber] that I had total memory of everything." *Id.*, 37: 9-19, docket #338-2 at 6.

Based upon this testimony, Defendant seeks to depose Mr. Aber concerning Plaintiff's memory of the January 3, 2007 incident, including any statements Plaintiff made regarding how the incident occurred; any admissions of fault; whether Plaintiff assaulted or attempted to assault

12

Defendant; whether Mr. Aber pushed the plea deal and why the plea was a good deal for Plaintiff; what defenses Plaintiff lacked against the police and why; and whether he stated that he was not comfortable going to trial with Plaintiff and, if yes, why.

First, the Court concludes that the relevancy of whether Mr. Aber pushed the plea deal, whether the deal was good for the Plaintiff, what defenses Plaintiff may have lacked in his criminal case, and whether Mr. Aber was comfortable going to trial is not readily apparent in this case. Defendant makes no persuasive argument concerning the relevancy of these issues.

Second, the Court concludes that Plaintiff did not disclose during his deposition any communications regarding admissions of fault. Further, an inquiry to Mr. Aber as to "whether Plaintiff assaulted or attempted to assault Defendant" is not proper based upon Plaintiff's testimony; rather, Defendant may ask Mr. Aber whether Plaintiff made the statements concerning "assault" he claims to have made to Mr. Aber. There is insufficient information at this stage to determine whether Plaintiff's statements concerning "assault" implicate Rule 502.

Third, the Court concludes that Plaintiff has intentionally waived any attorney-client privilege as to his memory of the January 3, 2007 incident, including statements Plaintiff made to Mr. Aber about how the incident occurred. Such discovery is relevant to this case; therefore, Defendant may depose Mr. Aber concerning these issues.

Defendant does not explain what communications or information has been allegedly waived with the presence of Plaintiff's sister and/or father at Plaintiff's meetings with Mr. Aber. To the extent the Defendant claims that he may depose Mr. Aber as to the same issues described above due to the presence of Plaintiff's family members, the Court's analysis is the same. To the extent that the Defendant argues any disclosures in the presence of Plaintiff's family were "inadvertent," the Court notes that Fed. R. Evid. 502(b) governs inadvertent disclosures in federal proceedings.

With respect to Defendant's argument that Plaintiff has impliedly waived any attorney-client privilege attaching to communications with Mr. Aber by filing a lawsuit against Mr. Aber alleging ineffective assistance of counsel, the Court notes that Defendant supports his argument by citing to Colorado law and to a Tenth Circuit case holding specifically that "[w]hen a *habeas petitioner* claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications." *See United States v. Pinson*, 584 F.3d 972, 977-78 (10th Cir. 2009) (emphasis added). Certainly, the present action does not involve a petition for habeas corpus and, as set forth above, issues involving the attorney-client privilege in this case are governed by federal law. *In re Qwest Comm'cns Int'l Inc.,* 450 F.3d 1179, 1185 (10th Cir. 2006) (Rule "501 provides that privileges in federal-question cases generally are governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.") (internal quotations omitted). Therefore, without binding or persuasive support, the Court will not extend Defendant's implied waiver argument to a federal question civil case.

### III.    Conclusion

The Plaintiff has failed to demonstrate that communications or information concerning whether Mr. Aber had knowledge of the medications Plaintiff was taking at the time of the meetings and the plea hearing (yes or no); whether Plaintiff slept during the meetings or the plea hearing (yes or no); whether Plaintiff fully participated in the plea hearing (yes or no); and Plaintiff's mental acuity from the time Plaintiff met with Mr. Aber through the time of the plea hearing are privileged. Further, the Plaintiff has failed to demonstrate a lack of waiver as to whether Plaintiff made the statements concerning "assault" he claims to have made to Mr. Aber (as set forth in Plaintiff's deposition) and as to communications regarding Plaintiff's memory of the January 3, 2007 incident,

including statements Plaintiff made to Mr. Aber about how the incident occurred. Defendant may depose Mr. Aber concerning these issues. All other communications identified by the Defendant are irrelevant or were neither disclosed nor waived as described herein. Accordingly, the Court ORDERS that Defendant's Motion to Compel Deposition of Attorney Witness [filed March 21, 2013; docket #338] is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

Dated at Denver, Colorado this 30th day of April, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge