IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-01380-MSK-MEH

**DARRELL L. HAVENS,**

    Plaintiff,

v.

**WILLIAM JOHNSON,**

    Defendant.

## OPINION AND ORDER GRANTING
## MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on the Defendant William Johnson's Motion for Summary Judgment **(#348)**, the Plaintiff Darrell Havens' Response **(#353)**, and Mr. Johnson's Reply **(#358)**. Mr. Johnson previously filed an unopposed Motion to Supplement **(#364)** his motion for summary judgment. The motion to supplement was granted **(#371)** and the attached evidence was considered in deciding this motion.

### I. Material Facts

The following facts are construed from the evidence presented by both parties and are viewed in the light most favorable to Mr. Havens.

In January 2007, the Denver Metro Auto Theft Task Force planned a sting operation to arrest the Plaintiff Darrell Havens, who was believed to be part of car theft ring and driving a stolen Audi A6 vehicle. As part of the operation, a confidential informant arranged to buy the Audi from Mr. Havens for money and drugs. Mr. Havens and the informant agreed to meet in an

alcove behind a Target store in Arvada, Colorado where they would execute the transaction.[1] Knowing where the transaction would take place, task force officers planned to follow the Audi into the alcove, block it in with their own vehicles, and then take Mr. Havens from his vehicle and arrest him.

As agreed, Mr. Havens drove the Audi to the specified location behind Target on the evening of January 3, 2007. Unbeknownst to Mr. Havens, officers saw him enter the Target parking area and followed him around to the alcove. The officers were aware of Mr. Havens' criminal history, including robbery and possession of weapons, and that he had twelve active warrants against him. They also knew that Mr. Havens was known to flee from law enforcement.

As Mr. Havens pulled into the alcove, he spotted a blue unmarked Chevrolet Blazer that he thought was his buyer. In fact, the Blazer was occupied by Arvada Detective C.J. Bickmore and Colorado State Patrol Officer Billy Mayfield. The Blazer had backed into the alcove so that it was parked parallel to the south wall and faced west. Mr. Havens approached the alcove along the back wall of the Target, heading north. When he saw the Blazer, he made a U-turn back into the alcove and headed toward the Blazer, perpendicular to it.

At the same time, officers began approaching the alcove in their vehicles from both directions, intending to pin the Audi in. One of the approaching vehicles was a blue pickup truck driven by Colorado State Patrol Officer Kelly Pickering. Officer Pickering entered the alcove from the east and turned south to bring his blue pickup truck close to or touching the rear bumper

---

[1] The alcove sits in what is essentially a cutout corner of the Target store. The front of the store faces east. A narrow access road borders the building. Heading clockwise around the building, the access road follows the back western wall of the building and then turns right along the north side of the building. Where the access road turns right at the area of the northwest corner, the corner inverts into the building structure. The inverted corner creates an L-shaped cutout with short walls to the south and east. There are only two ways in and out of the alcove via the access road that boarders it.

of the Audi. The Audi was still about ten feet or more from the Blazer. The next vehicle to arrive was a white Chevrolet pickup truck driven by Brian Sandy of the Colorado Parks Department. This truck approached from the south along the back of the Target and then turned east into the alcove. The passenger in the truck was the Defendant, Arvada Detective William Johnson. As Sandy came around the corner, he activated police lights on the truck.

Mr. Havens alleges that he saw no other vehicles, but that as he approached the Blazer, the Audi was suddenly struck from the behind by a truck, which pushed the Audi into the passenger side of Blazer.

As the Audi struck the Blazer, Sandy had just turned into the alcove. Sandy and Detective Johnson observed what they believed to be the Audi ramming itself into the side of the Blazer and trying to escape. Believing that Mr. Havens was attempting to flee, Sandy turned his truck hard to the right and plowed into the passenger side of the Audi, driving it sideways into a large snowbank along the east wall of the alcove.

Sandy and Detective Johnson then got out of the truck to arrest Mr. Havens. Their plan was that if Mr. Havens resisted arrest, Sandy would break the front window of the Audi, and Detective Johnson would use a Taser on him. As Sandy and Johnson exited the truck, the Audi's engine revved and it was moving violently back and forth, alternating between drive and reverse. Although the Audi was momentarily immobilized next to the snowbank, it appeared to the officers to be attempting an escape. As the Audi rocked and spun its tires, Sandy's white truck was pushed backwards on ice and slush. Realizing that they would not easily be able to arrest Mr. Havens, Sandy made his way to the Audi's passenger side window and broke it in with a wrench. Because of the Audi's movement, he retreated back to the driver's side of his truck and

took up a position behind the engine block of the hood. Detective Johnson, having just existed the passenger side of the truck, had not yet reached the Audi to use the Taser.

Meanwhile, Officer Pickering was in position behind the Audi with his weapon drawn. He yelled, "stop, police, turn off your car, stop," but the commands were ignored. The Audi continued to rock and accelerate as it pivoted around the white truck's front right bumper. Just as Detective Johnson exited the truck, the Audi freed itself and completed its turn around the front of the truck. It then began moving parallel along the side of the truck towards Detective Johnson. Detective Johnson, realizing that the Taser was not going to work, drew his weapon. He repeatedly yelled to Mr. Havens to stop and put the car in park, but Mr. Havens did not stop and continued to move towards Detective Johnson. Detective Johnson began backpedaling, trying to put space between himself and the Audi. Detective Johnson was wearing a jacket that read "POLICE" in reflective lettering on one panel and a sewn-on badge on the other panel.

When the Audi was within five feet of Detective Johnson, he began firing shots into the Audi's windshield as he backpedaled. The Audi then hit Detective Johnson, bent him over the hood, and pushed him backwards. Detective Johnson pushed himself up on the hood as he continued firing shots. As Detective Johnson was firing, Sergeants Eric Strasheim and Link Strate of the Arvada Police Department came on the scene from the south in a Dodge Intrepid. Sergeants Strasheim and Strate saw the Audi moving toward Detective Johnson. Afraid that he was about to see Detective Johnson be crushed, Sergeant Straheim turned the Intrepid into the driver's side door of the Audi, effectively pinning it next to the truck. Detective Johnson had fired at least eight shots into the Audi's windshield.

Although the Audi was immobilized next to the truck, it remained in gear and the tires continued to spin. Finally, one of the officers broke into the Audi and turned off the engine.

Officers then discovered that Mr. Havens was shot. They rendered aid and immediately called for medical assistance. It was later determined that three bullets had struck Mr. Havens, rendering him quadriplegic.

Mr. Havens was charged with various crimes related to the incident. He pled guilty to attempted first degree assault of Detective Johnson, among other things, and was sentenced to 20 years of incarceration. At the plea hearing, Mr. Havens admitted that there was a factual basis for his plea. He later challenged the validity of his plea before the state trial court and on appeal, but he was ultimately unsuccessful. *See People v. Havens*, 11CA2560 (Colo. App. October 17, 2013) (unpublished).

Mr. Havens now asserts a claim against Detective Johnson under 42 U.S.C. § 1983 for the excessive use of force in violation of the Fourth and Fourteenth Amendments of the United States Constitution. He contends that the use of deadly force in shooting him was excessive and unreasonable in light of the circumstances.

Detective Johnson moves for summary judgment in his favor.

## II. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### III. Analysis

Detective Johnson argues that Mr. Havens cannot establish a *prima facie* claim of excessive force, and that even if a claim can be demonstrated, that he is entitled to qualified immunity. Because the qualified immunity analysis itself involves an assessment of whether a plaintiff has come forward with sufficient evidence to show a *prima facie* claim, the two contentions will be considered together.

The doctrine of qualified immunity protects individual state actors from civil liability if their conduct "does not violate clearly established statutory or constitutional right of which a reasonable person would have known." *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244 (2012). When a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to satisfy a two-part test. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009). A plaintiff must show that (1) he or she had a constitutional right that was infringed (the "violation prong"), and (2) such right was clearly established at the time of the alleged infringement (the "clearly established prong"). Although a plaintiff must ultimately establish both elements to avoid application of the doctrine, the Court has discretion to consider the elements in any order. *See Pearson v. Callahan*, 555 U.S. 223 (2009); *Green*, 574 F.3d. at 1299.

    1. *Constitutional Violation*

To prove a claim of excessive force under § 1983, Mr. Havens must show that Detective Johnson used an objectively excessive amount of force in light of the facts and circumstances confronting him. *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). The precise question in an excessive force case is whether the officer's actions were "objectively reasonable" in light of the facts and circumstances, without regard to his or her underlying intent

or motivation. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Reasonableness is evaluated under a totality of the circumstances approach. Among factors to consider are the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396.

The use of deadly force is not unlawful if a reasonable officer would have had probable cause to believe that there was a threat of serious physical harm to himself or others. *Thomas v. Durastanti*, 607 F.3d 655, 664 (10th Cir. 2010). In assessing the degree of threat the suspect poses to the officer, the Court considers factors such as: (1) whether the officer ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon toward the officer; (3) the distance separating the officer and the suspect; and (4) the manifest intentions of the suspect. *Estate of Larsen*, 511 F.3d at 1260. Thus, "if threatened by weapon (which may include a vehicle attempting to run over an officer), an officer may use deadly force." *Id.* (citing *Scott v. Edinburg*, 346 F.3d 752, 757 (7th Cir. 2003)). An officer is not required to be correct in his or her assessment of the danger presented by the situation, only that their assessment be objectively reasonable. *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004). Another important aspect of the inquiry is whether the officer was in danger at the precise *moment* that he or she used force. *Phillips v. James*, 422 F.3d 1075, 1083 (10th Cir. 2005). The reasonableness of the use of force depends not only on whether the officer was in danger at the precise moment that they used force, but also on whether the officer's own "reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995).

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the benefit of hindsight. *Graham*, 490 U.S. at 396. "Because police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." *Saucier*, 533 U.S. at 205.

Detective Johnson argues that Mr. Havens is collaterally estopped from taking the position that Johnson's use of force was excessive because Mr. Havens pled guilty in state criminal proceedings to attempted first degree assault of Detective Johnson. He argues that Mr. Havens is attempting to relitigate an element of the crime he pled guilty to, and he is therefore barred from asserting his claim for excessive force.

Under Colorado law, collateral estoppel bars relitigation of an issue if the issue sought to be precluded is identical to an issue "actually determined" in the prior proceeding; the party against whom estoppel is asserted was a party to or in privity with a party to the prior proceeding; there was a final judgment on the merits in the prior proceeding; and the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding. *Jiron v. City of Lakewood*, 392 F.3d 410, 416 (10th Cir. 2004) (citing *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo. 2001)). A guilty plea in a state criminal proceeding can have preclusive effect in a subsequent civil proceeding where the guilty plea involves admitting to facts that are the same as those at issue in later proceedings. *See Jiron*, 392 F.3d at 417; *Allen v. Martin*, 203 P.3d 546, 565 (Colo. App. 2008).

An element of the crime of attempted first degree assault is that the defendant (Mr. Havens) engaged in conduct constituting a substantial step toward causing serious bodily injury

9

to another person (Detective Johnson) and that he acted with the intent to cause such injury. Detective Johnson argues that Mr. Havens' guilty plea is dispositive of whether his use of force was objectively reasonable because Mr. Havens admitted he put Detective Johnson in danger.

The Court disagrees. Detective Johnson's argument is flawed in that he conflates factual and legal issues. By virtue of his guilty plea, Mr. Havens is estopped from taking a *factual* position that is contrary to facts admitted during the criminal proceedings. But whether those facts are determinative of the legal question of whether Detective Johnson's use of force was objectively reasonable is a different matter. Here, the reasonableness inquiry must take into consideration the totality of the circumstances when viewed from the perspective of the officer — an issue that is not identical to an element of the crime of attempted assault, or any other issue "actually determined" as part of the guilty plea. The plea addresses only one factor to consider in determining the degree of danger present when Detective Johnson fired shots — that is, that at some point during the incident, Mr. Havens attempted and intended to cause injury to Detective Johnson. Of course, knowing that Detective Johnson was not in a position of danger until he exited the truck, and that Mr. Havens never left his vehicle, the attempted assault had to have occurred after Mr. Havens had positioned the Audi toward Detective Johnson and was driving towards him. However, the plea does not address other factual information regarding the relationship between the attempted assault and the shooting — *i.e.*, the timing between the attempted assault and the shooting, or the distance between Mr. Havens and Detective Johnson when he shot. Thus, Mr. Havens' factual admissions are not dispositive of the ultimate legal question of whether Detective Johnson's actions were objectively reasonable. Rather, they must be considered as part of the totality of the circumstances in making that legal determination.[2]

---

[2] Detective Johnson also argues that, by virtue of Mr. Havens' plea, he is barred by the doctrine of judicial estoppel and the holding of *Heck v. Humphrey*, 512 U.S. 477 (1994). The Court

10

Mr. Havens' independent memory of what happened on January 3, 2007 is extremely limited. He testified that after the Audi was first hit by a truck, he flew forward and then backward in his seat, and then "almost instantly" he was struck by gunshots. He argues, however, that there are inconsistencies in the officers' testimony that demonstrate disputed issues of material fact and preclude summary judgment. The Court rejects this argument because alleged factual inconsistencies in the officers' testimony are irrelevant. On summary judgment, the Court must accept Mr. Havens' version of the facts so long as it is supported by the record.

Even when viewing all of the evidence in the light most favorable to Mr. Havens, the Court finds that Detective Johnson could have reasonably perceived that he was in danger at the moment that he shot into the Audi windshield. After the Audi was pinned against the snowbank, both Detective Johnson and Officer Pickering ordered Mr. Havens to stop the car. Those orders were ignored as Mr. Havens continued to rev the Audi's engine and move it back and forth to get out of the snowbank. When Mr. Havens finally turned the Audi around the front corner of the truck, he was directly facing Detective Johnson. Detective Johnson was confined in a narrow area between the vehicles as the Audi accelerated directly towards him. He tried to backpedal in the limited space he had to escape being hit by the Audi. By the time Detective Johnson resorted to the use of his weapon, the Audi was within five feet of him. Indeed, the Audi eventually hit him and bent him over the hood. By virtue of his plea, Mr. Havens admits that he intended to cause serious bodily harm to Detective Johnson. Further, the officers were aware that Mr. Havens was a felon with a history of evading arrest by whatever means necessary. After the Audi was pinned into the snowbank and was rocking back and forth, it was reasonable to infer

---

disagrees. Although judicial estoppel, like collateral estoppel, prevents Mr. Havens from taking a contrary factual position in this proceeding, his admissions in his plea are not dispositive of the inquiry here. For the same reason, the holding in *Heck v. Humphry* is inapplicable — a judgment in Mr. Havens' favor in this case does not necessarily imply the invalidity of his conviction in state court.

from Mr. Havens' conduct that he was trying to make an escape. In light of Mr. Havens' history, how he was maneuvering the Audi, and the danger that he presented to Detective Johnson and the other officers, it was objectively reasonable for Detective Johnson to use deadly force to stop Mr. Havens.

Mr. Havens suggests that Detective Johnson's use of force was unreasonable because he put himself in danger by exiting the truck. The Court rejects this argument. There is nothing in the record to support an inference that Detective Johnson's conduct unreasonably created the need to use force. After the Audi was pinned next to the snowbank, it was reasonable for Detective Johnson to believe that Mr. Havens would comply with police commands and surrender himself. Because the Audi was immobilized, Detective Johnson believed that it was an appropriate time to make the arrest. It was Mr. Havens' actions in maneuvering the Audi that ultimately put Detective Johnson in danger.

Accordingly, the Court finds that Mr. Havens has failed to produce sufficient competent evidence to establish a *prima facie* case of excessive force. Further, Detective Johnson is entitled to qualified immunity because Mr. Havens failed to show that his constitutional rights were infringed.

2. *Clearly Established Law*

The "clearly established" inquiry examines whether the contours of the constitutional right were so well-settled, in the particular circumstances presented, that "every reasonable [state] official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012). To satisfy this prong, the burden is on the plaintiff to point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes an actionable constitutional violation in the circumstances presented. *Schwartz v.*

*Booker*, 702 F.3d 573, 587-88 (10th Cir. 2012); *see also Thomas v. Durstanti*, 607 F.3d 655, 669 (10th Cir. 2010) (plaintiff bears the burden of citing to requisite authority). It is not necessary for the plaintiff to adduce a case with identical facts, but the plaintiff must identify some authority that considers the issue "not as a broad general proposition," but in a "particularized" sense — for example, it is not sufficient to ask whether it is "clearly established" that the Fourth Amendment prohibits the use of excessive force in effecting an arrest; rather, the Court examines whether that constitutional principle has previously been found to prohibit "shoot[ing] a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." *Brosseau v. Haugen*, 453 U.S. 194, 198-200 (2004).

Here, the general principle governing the use of force is clearly established: deadly force is justified only if a reasonable officer in the officer's position would have had probable cause to believe that there was a threat of serious physical harm to himself or others. *Graham*, 490 U.S. at 396. The more precise inquiry in this case is whether excessive force has been found where an officer shoots at a suspect who is directly driving toward him in a confined space, apparently in an effort to flee.

Not only has Mr. Havens not pointed to authority that would suggest that Detective Johnson's actions would constitute excessive force under the circumstances presented, but in circumstances similar to those here, the Tenth Circuit has found that there was no excessive force. When a driver hit an officer with his SUV as he maneuvered an escape out of a small convenience store parking lot, the officer's firing at the driver was not excessive force. *See Thomas*, 607 F.3d at 664-666. Finding no clearly established law to suggest that Detective Johnson's actions were unlawful at the time, Detective Johnson is entitled to qualified immunity on the "clearly established" prong as well.

## IV.  Conclusion

For the forgoing reasons, the Defendant's Motion for Summary Judgment **(#348)** is **GRANTED**.  Mr. Havens' claim of excessive force against Detective Johnson is barred by the doctrine of qualified immunity.  Judgment shall enter in favor of the Defendant.  The Clerk is directed to close this case.

Dated this 28th day of February, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge